JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Eric Buchanan ("Buchanan"), appeals his convictions for attempted rape, kidnapping, felonious assault, attempted murder, and aggravated robbery. We find merit to the appeal and reverse the convictions and remand for a new trial.
 {¶ 2} Buchanan's convictions stem from a series of events which occurred in Cleveland on April 7, 2000, around 11:20 a.m. On that day, Buchanan approached a 17-year-old girl, D.G., at the bus stop on East 55th Street and Quincy Avenue. D.G. testified at trial that, after cursing to himself, Buchanan turned to her and said, "Bitch, I have a gun." D.G. attempted to leave, but he grabbed her arm and pulled her back. He told her again, "I have a gun. I am not playing with you," and hit her in the face with the gun and ordered her to take off her clothes. According to D.G., Buchanan pointed the gun at her, said he was "very high," and repeatedly ordered her to take off her clothes. After unsuccessful attempts to obtain help from passing motorists, D.G. ran across the street. She heard three gunshots fired in her direction, but none of them hit her.
 {¶ 3} Approximately 55 minutes later, Buchanan entered a hardware store on East 55th Street. According to the testimony of customer Robert McLurkin and several other witnesses, Buchanan entered the store mumbling to himself and then said, "This is a stick-up." Buchanan never demanded any money from McLurkin or the cashier, Carrie Favors, but he struck McLurkin over the head with the gun. Buchanan then pointed the gun at McLurkin's head and pulled the trigger three or four times but no shots were fired. After a brief struggle, Buchanan ran toward the door, and his gun discharged, striking him in the buttocks.
 {¶ 4} CMHA patrol officers Saleem Alind Michael Spigner spotted Buchanan on East 55th Street and ordered him to stop. Officer Ali testified that Buchanan responded, "I'm scared to die. * * * I'll shoot police in their mother fucking head." Officer Ali then tackled Buchanan, and his partner handcuffed him.
 {¶ 5} Cleveland police arrived on the scene, and Buchanan was transported to Metro Hospital. Officer William David testified that, while at the hospital, Buchanan "asked me if I was around when he was doing all the shooting."
 {¶ 6} Det. Scott Zenkewicz testified that two eyewitnesses from the hardware store identified Buchanan from a photo array. He testified that D.G. also identified Buchanan as her assailant when he was apprehended by police.
 {¶ 7} Buchanan was charged in a six-count indictment with attempted rape, kidnapping, and felonious assault of D.G., attempted murder and aggravated robbery of Robert McLurkin, and aggravated robbery of Carrie Favors. All counts included firearm specifications, and the kidnapping and felonious assault charges also included a sexual motivation specification.
 {¶ 8} After referring Buchanan to the court psychiatric clinic for a competency and sanity evaluation, the trial court held a hearing and found Buchanan competent to stand trial. Buchanan submitted a letter to the court expressing his desire to discharge his court-appointed attorney and to represent himself at trial because he believed he was receiving "ineffective assistance of counsel." He also expressed his concern that his counsel intended to use his psychiatric history as part of his defense and, as a result, he wanted to proceed without counsel. He stated in the letter, "I Eric D. Buchanan do hereby knowingly and intelegently (sic) waive my right to counsel. I have the capacity to understand the proceedings and to assist counsel."
 {¶ 9} The day before the scheduled trial, the court held a hearing on Buchanan's request to discharge counsel. The following colloquy occurred between the trial court and Buchanan:
"Court: It has come to the court's attention via letter that'sundated, indicating that Mr. Buchanan wishes to discharge Mr. Resnickfrom representing him. Is that your desire, Mr. Buchanan?
 Mr. Buchanan: Yes, ma'am.
 Court: I am informing you it's in your best interest to have anexperienced counsel defend you, but as you indicated in your letter, youwish to represent yourself. You have the right to do that. This case isset for trial tomorrow, so you want to represent yourself tomorrow attrial?
 Mr. Buchanan: Yes, ma'am.
 Court: Very good. Mr. Resnick, you are released from furtherrepresentation. If you would like to have the law clerk photocopy somepertinent documents for Mr. Buchanan for tomorrow morning, that would befine. You don't have to turn your file over to him.
 Mr. Resnick: For the record, your Honor, I have provided Mr. Buchananwith my motions in the past, the requests, the responses to my requestsfor discovery. I have filed other motions last week. I will give him acopy of that right now.
 Court: Very good. Thank you. Mr. Buchanan, just so the record isclear, should this case come up for review at a future date, you arecharged under a multiple count indictment, as follows: * * *"
 {¶ 10} Following this exchange and after the trial court discharged defense counsel, the court informed Buchanan of the crimes with which he was charged and the possible penalties for each crime.
 {¶ 11} The next day, Buchanan appeared for trial, dressed in his orange jail jumpsuit. At the close of the State's case, the trial court heard arguments on a Crim.R.29 motion for acquittal. After denying the motion, the case proceeded to closing arguments. The jury returned guilty verdicts on all counts of the indictment except for one count of aggravated robbery.
 {¶ 12} On September 11, 2000, the trial court conducted a sentencing and sexual offender classification hearing. The court imposed concurrent seven-year terms of imprisonment for the attempted rape and kidnapping convictions, an eight-year prison term for felonious assault, to be served consecutively to the attempted rape and kidnapping convictions, and ten-year concurrent terms for the attempted murder and aggravated robbery convictions, to be served consecutively to the seven and eight-year prison terms. The court also imposed three years for the firearm specification and, as a result, the total sentence was 28 years' incarceration.
 {¶ 13} Buchanan appeals, raising five assignments of error.
 Waiver of Counsel {¶ 14} In his first assignment of error, Buchanan contends that the trial court deprived him of his constitutional right to counsel by accepting his waiver without ascertaining whether it was knowingly, intelligently, and voluntarily made. We agree.
 {¶ 15} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v.Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citingFaretta v. California (1975), 422 U.S. 806. However, "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right, including the right to be represented by counsel." State v. Dyer (1996), 117 Ohio App.3d 92, 95. As a result, "a valid waiver affirmatively must appear in the record, and the State bears the burden of overcoming the presumption against a valid waiver."State v. Martin, Cuyahoga App. No. 80198, 2003-Ohio-1499. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." Gibson, supra, paragraph two of the syllabus.
 {¶ 16} Although there is no prescribed colloquy in which the trial court and a pro se defendant must engage before a defendant may waive his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. Martin,
supra, citing State v. Jackson (2001), 145 Ohio App.3d 223, 227. Given the presumption against waiving a constitutional right, the trial court must ensure the defendant is aware of "the dangers and disadvantages of self-representation" and that he is making the decision with his "eyes open." Faretta, supra, at 835.
 {¶ 17} In determining the sufficiency of the trial court's inquiry in the context of the defendant's waiver of counsel, the Gibson court applied the test set forth in Von Moltke v. Gillies (1948), 332 U.S. 708,723, as follows:
"* * * To be valid such waiver must be made with an apprehension of thecharges, the statutory offenses included within them, the range ofallowable punishments thereunder, possible defenses to the charges andcircumstances in mitigation thereof, and all other facts essential to abroad understanding of the whole matter."
 {¶ 18} See, also, State v. Perry, Cuyahoga App. No. 81825, 2003-Ohio-1175; Martin, supra; State v. Buckwald, Cuyahoga App. No. 80336, 2002-Ohio-2721; State v. Richards (Sept. 20, 2001), Cuyahoga App. No. 78457; State v. Jackson, supra; State v. Melton, (May 4, 2000), Cuyahoga App. No. 75792. Lack of compliance with these standards is reversible error and not subject to harmless error review. Id.
 {¶ 19} Additionally, Crim.R. 44(C) requires that the trial court obtain a signed, written waiver by the defendant in "serious offense cases." A "serious offense" is defined as any felony and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months. Crim.R. 2(D). The absence of a signed waiver in a serious offense case constitutes reversible error. Martin, supra. See, also, State v. Suber, Franklin App. No. 02AP-1419, 2003 Ohio App. LEXIS 4660 (departing from its previous position of applying a prejudicial error standard for trial court's failure to strictly comply with Crim.R. 44(C) and adopting the standard of reversible error shared by the majority of Ohio appellate courts).
 {¶ 20} In the instant case, the trial court failed to engage in the necessary colloquy to ensure that Buchanan's waiver of counsel was knowingly, intelligently, and voluntarily made. The trial court merely asked Buchanan if it was his desire to represent himself, told him it was against his best interests, and then allowed the waiver. At no time did the trial court inquire as to Buchanan's understanding of the charges against him and the possible penalties he faced nor did the court discuss any potential defenses that might apply. The trial court's explanation of the possible penalties, after it dismissed Buchanan's appointed counsel, was meaningless in light of the court's failure to ascertain whether Buchanan understood the penalties. Additionally, the trial court neglected to adequately inform Buchanan of the perils of self-representation. The trial court's brief advice that self-representation was against his best interests is hardly enough to suggest that Buchanan proceeded to trial with his "eyes open."
 {¶ 21} Moreover, this court is reluctant to find that Buchanan's letter sufficiently complied with Crim.R. 44(C) to constitute a valid written waiver. In the letter, Buchanan included the sentence, "I have the capacity to understand the proceedings and to assist counsel." The trial court failed to ascertain whether this sentence was erroneously written and, if so, failed to strike it from the letter. Given that "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right, including the right to be represented by counsel," the letter fails to strictly comply with Crim.R. 44(C). See Dyer, supra, at 95.
 {¶ 22} Accordingly, Buchanan's first assignment of error is sustained. Because Buchanan's waiver of counsel was not knowingly, intelligently, and voluntarily made and failed to comply with Crim.R. 44(C), the case is remanded for a new trial.
 {¶ 23} Although our disposition of Buchanan's first assignment of error renders moot some of the remaining assignments of error, "to the extent that they raise arguments regarding the sufficiency of the evidence they must be addressed, since a reversal on sufficiency grounds would bar retrial on the counts affected." Suber, supra, at 18, citing,Tibbs v. Florida (1982), 457 U.S. 31. Therefore, we will address the third assignment of error.
 Sufficiency of the Evidence for the Attempted Rape {¶ 24} In his third assignment of error, Buchanan contends that the State failed to present sufficient evidence to sustain his conviction for attempted rape and, therefore, the trial court should have granted his motion for acquittal. We agree.
 {¶ 25} Crim.R. 29(A) provides, in relevant part:
"The court on motion of a defendant or on its own motion, after theevidence on either side is closed, shall order the entry of a judgment ofacquittal of one or more offenses charged in the indictment,information, or complaint, if the evidence is insufficient to sustain aconviction of such offense or offenses."
 {¶ 26} The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, 20 OBR 215,485 N.E.2d 717, the court summarized the standard of review for a sufficiency claim:
"* * * The test is whether after viewing the probative evidence andinferences reasonably drawn therefrom in the light most favorable to theprosecution, any rational trier of fact could have found all the essentialelements of the offense beyond a reasonable doubt. The claim ofinsufficient evidence invokes an inquiry about due process. It raises aquestion of law, the resolution of which does not allow the court toweigh the evidence." (Citations omitted.)
 {¶ 27} R.C. 2923.02(A) provides that a person is guilty of an attempt to commit a crime if he "purposely or knowingly * * * engages in conduct that, if successful, would constitute or result in the offense." Here, Buchanan was convicted of attempted rape pursuant to R.C.2907.02(A)(2), which provides:
"* * * No person shall engage in sexual conduct[1] with another whenthe offender purposely compels the other person to submit by force orthreat of force."
 {¶ 28} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step toward the commission of an offense. State v. Woods (1976),48 Ohio St.2d 127, paragraph one of the syllabus, overruled on other grounds by State v. Downs (1977), 51 Ohio St.2d 47. The Woods court further stated that the act "must be strongly corroborative of the actor's criminal purpose" in order "to constitute a substantial step" toward the act but need not be the last proximate act prior to the commission of the offense. Id. at paragraph one of the syllabus, 131-32. Therefore, the act must "convincingly demonstrate" the defendant's firm purpose to commit the offense. Id.
 {¶ 29} In the instant case, the State produced evidence that Buchanan repeatedly ordered D.G. to take off her clothes while he pointed a gun at her. We find that this act alone does not "convincingly demonstrate" Buchanan's desire to rape her. As D.G. testified, she did not know his motive for ordering her to undress. She expressed confusion over his demand, considering they were seated at a bus stop in the middle of the day, visible to passing motorists. Buchanan never attempted to engage in any sexual conduct with D.G. nor did he ever state his intention to rape her.
 {¶ 30} The Ohio Supreme Court has held that evidence of the victim's pants being pulled down and her blouse opened, without more, is insufficient to convict a defendant of attempted rape. See State v.Heinish (1990), 50 Ohio St.3d 231. Moreover, we agree with Buchanan that his ordering D.G. to undress could have been a step in a course of conduct planned to culminate in an offense other than rape. Compare,State v. Powell (1990), 49 Ohio St.3d 255 (defendant's order for victim to undress was strongly corroborative of his intent to rape her because he confessed he was going to have sex with her). The State produced no evidence indicating that Buchanan desired to engage in sexual conduct with D.G.
 {¶ 31} Viewing the evidence in a light most favorable to the prosecution, we find that the State failed to produce evidence as to the requisite elements of attempted rape and, therefore, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, Buchanan's conviction for attempted rape is reversed, with no opportunity for retrial.
 {¶ 32} Buchanan's third assignment of error is sustained.
 {¶ 33} Based on our disposition of the above assignments of error, Buchanan's remaining assignments of error are rendered moot.[2]
 {¶ 34} The judgment is reversed. Case remanded for a new trial.
 {¶ 35} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
Ann Dyke, P.J., and Diane Karpinski, J., concur.
It is, therefore, considered that said appellant recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Pursuant to R.C. 2907.01(A), sexual conduct is defined as "* * * without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another."
[2] Buchanan's second assignment alleged error based on his appearing at trial in his orange jumpsuit. His fourth assignment alleged an error in the jury instructions. His fifth assignment alleged error in sentencing, i.e. failure to make the requisite findings.