[Cite as *State v. Mootispaw*, 2010-Ohio-4772.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 09CA33 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| Dennis Mootispaw, | : | |
| Defendant-Appellant. | : | **Released 9/24/10** |

_____
APPEARANCES:

Carol Ann Curren, Greenfield, Ohio, for appellant.

James B. Grandey, Highland County Prosecutor, and Anneka P. Collins, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.
_____
Harsha, J.

{¶1}    Dennis Mootispaw appeals the order of the court that found him guilty of supervision violations, revoked his judicial release, and sent him back to prison to serve the remainder of his original prison term.

{¶2}    After Mootispaw served a year of a three year sentence for felonious assault, the court granted his petition for judicial release.  Several months later the Adult Parole Authority alleged that he violated three terms of judicial release.  After Mootispaw appeared pro se at a hearing on the supervision violations and admitted to two of them, the court reinstated his prison sentence.

{¶3}    Mootispaw contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel at the revocation hearing.  Because of the strong presumption against the waiver of the constitutional right to counsel, we agree.  The court engaged Mootispaw in a brief waiver colloquy in which it did not warn him of the dangers inherent

in self representation.  And, when asked if he wanted counsel, Mootispaw responded that he spoke to a probation officer and believed he was "ready to proceed" pro se. This comment indicated that Mootispaw's decision to waive counsel may have been based on a misconception arising from a conversation with an adversarial party.  Thus, further inquiries were necessary before the court could determine that Mootispaw was waiving the benefit of counsel with "eyes open."  Consequently, we find merit in Mootispaw's appeal.

## I.  The Hearing on Supervision Violations

{¶4}    Mootispaw pleaded guilty to felonious assault and received a three year prison sentence.  Roughly a year later the court granted him judicial release under R.C. 2929.20.  As a condition of early release, the court imposed community control sanctions for five years and ordered the Adult Parole Authority, acting as the Probation Department, to supervise Mootispaw.

{¶5}    Several months after his release, Sheri Barton, a Probation Officer with the Adult Parole Authority, filed a notice of supervision violations.  In it, she alleged three violations: (1) he was convicted of disorderly conduct in Fayette County; (2) he possessed ammunition and a magazine for a handgun; and (3) he consumed an alcoholic beverage.

{¶6}    The next day Mootispaw, Barton, and a Highland County Prosecutor appeared at a hearing on the alleged violations.  The court informed Mootispaw of the nature of the alleged supervision violations.  The court also told Mootispaw that he could be sent back to prison to serve the remainder of his prison sentence if the violations were found to be true.  The court then asked Mootispaw if he wanted an

attorney or wished to waive counsel.  Mootispaw twice declined counsel.  He then explained that he spoke with Barton about something and was "ready to proceed" pro se.  Although not a part of our record, Mootispaw alleges in his brief that Barton, prior to the hearing, discussed the "STAR" treatment program with him and he believed he would be sent there at the conclusion of the hearing.  Subsequent discussions between the court and the State that are part of the record appear to support Mootispaw's contentions.

**{¶7}**    After waiving counsel, Mootispaw admitted to being convicted of disorderly conduct and consuming alcohol.  The fact that the State then dismissed the allegation related to possessing ammunition, also lends support to the conclusion that there had been negotiations between Mootispaw and the State.

**{¶8}**    Before sentencing commenced, Mootispaw explained to the court that he was an alcoholic and had liver disease, needed medical attention for the alcoholism, and that prison was not helping him.

**{¶9}**    During the sentencing, the State began by stating "[i]n consultation with Ms. Barton of the Ohio Parole Authority, it has been offered to the Defendant the recommendation to the Star Community Justice Center."  The Judge asked Barton for more information about STAR and whether she believed it would benefit Mootispaw.  She briefly explained the nature of the program (a lock-down treatment facility).  She then said she was not sure STAR would accept Mootispaw in light of his medical condition.  She also stated that when she spoke to Mootispaw earlier, he was not "real keen on going there."  When asked by the court whether she believed the program

could benefit Mootispaw, she stated its success depended on whether he wanted to change his life.

{¶10} Mootispaw then revealed to the court that he suffered a myriad of health issues, including degenerative spine diseases, hepatitis of the liver, multiple eye diseases, and bone and muscular deficiencies.

{¶11} The State responded by telling the court, in light of Mootispaw's numerous medical problems, it did not believe that he could "successfully complete the bootcamp type of regime at the STAR program." The court agreed. It revoked Mootispaw's judicial release and ordered him to serve the balance of his three year sentence in a State correctional facility.

{¶12} After the court revoked judicial release, Mootispaw stated: "I'd like to ask for an Attorney, Your Honor." The Court responded: "We'll sure give you one for your appellate process if that's what you choose to do." Mootispaw then filed this appeal.

II. Assignments of Error

{¶13} Mootispaw assigns three errors:

{¶14} I.      THE DEFENDANT'S WAIVER OF COUNSEL WAS NOT DONE KNOWINGLY OR VOLUNTARILY AND HE WAS DEPRIVED OF HIS RIGHTS IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶15} II.     THE TRIAL COURT ERRED TO THE DETRIMENT OF THE DEFENDANT BY NOT INFORMING HIM OF THE POSSIBLE DANGERS OF SELF

REPRESENTATION AND ASCERTAING [sic] THAT THE DEFENDANT'S WAIVER WAS KNOWING AND VOLUNTARY.

**{¶16}** III.      DEFENDANT DENNIS MOOTISPAW'S ADMISSION TO HIS PROBATION VIOLATION WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

### III. Waiver of Counsel

**{¶17}** In his first assignment of error, Mootispaw argues that the court did not adequately inform him of the seriousness of the charges he faced and that he waived counsel under the mistaken belief that the hearing was "simply a formality to get him into the STAR program."  In his second assignment of error, Mootispaw complains that the court failed to inform him of the dangers of self-representation and the defenses available to him before accepting his waiver.  Both of these assignments of error involve whether his waiver of counsel was "voluntary" so we address them together.

**{¶18}** The Sixth Amendment to the United States Constitution as well as Section 10, Article I of the Ohio Constitution guarantee the right to assistance of counsel in all criminal prosecutions that may result in a jail sentence.  *State v. Wellman* (1974), 37 Ohio St.2d 162, 171, 309 N.E.2d 915, citing *Argersinger v. Hamlin* (1972), 407 U.S. 25, 92 S.Ct. 2006.  In *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, the United States Supreme Court extended the right to counsel to probation violation proceedings when required by due process.  Additionally, Crim.R. 32.3(B), titled "Revocation of community release," states: "[t]he defendant shall have the right to be represented by

retained counsel and shall be so advised. Where a defendant convicted of a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant, unless the defendant after being fully advised of his or her right to assigned counsel, knowingly, intelligently, and voluntarily waives the right to counsel." Crim.R. 32.3(D) – "Waiver of counsel" – indicates waiver "shall be as prescribed in Crim.R. 44(C)." Because a defendant also has the right of self-representation, the defendant may waive the right to counsel and elect to represent himself. See *Faretta v. California* (1975), 422 U.S. 806, 819-820, 95 S.Ct. 2525; *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶¶ 23-24; *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, at paragraph one of the syllabus.

{¶19} The Supreme Court of Ohio has stated: "in the case of a 'serious offense' as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." *Martin* at ¶39. Concerning what constitutes a "sufficient inquiry," the Court noted:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

{¶20} *Gibson* at 377, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723-724, 68 S.Ct. 316; see, also, *Martin* at ¶40. Furthermore, in order for the defendant to

"competently and intelligently * * * choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, at 835, quoting *Adams v. United States ex rel. McCann* (1943), 317 U.S. 269, 279, 63 S.Ct. 236. Although the foregoing authority addresses the right to counsel at trial, we believe it is also applicable to these proceedings.

**{¶21}** There is no single test to determine if a defendant has knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Bristow*, Scioto App. Nos. 07CA3186, 07CA3187, 2009-Ohio-523, at ¶17; *State v. Mitchell*, Washington App. No. 07CA50, 2008-Ohio-2419, at ¶15; *State v. Doyle*, Pickaway App. No. 04CA23, 2005-Ohio-4072, at ¶10. Instead, appellate courts should independently examine the record, i.e., conduct a de novo review, to determine whether the totality of circumstances demonstrates a knowing, intelligent, and voluntary waiver of the right to counsel. *Wellston v. Horsley*, Jackson App. No. 05CA18, 2006-Ohio-4386, at ¶10.[1]

**{¶22}** Accordingly, we look to the relevant portions of the waiver colloquy, which follows:

**{¶23}** THE COURT: * * * So, you were released in May of this year on certain terms and conditions, and Judge Luce [sic] in his order stated you'd be on Community Control for five (5) years; and the Court reserved the right to re-impose the three-year sentence, actually the two years, roughly two years that are still left on the three years, if you violated any of his orders, the orders that he gave you that day and also the orders that you're under with the Adult Parole Authority.

---

[1] *Wellston* is mistakenly indexed in the Westlaw legal research system under Webcite No. 2006-Ohio-4836. It is correctly indexed in LexisNexis.

**{¶24}** And then again yesterday, it was alleged in writing that you have violated some of those court orders and supervision, uh, terms and conditions of supervision. In particular, uh, that on October 9 of this year you were convicted of disorderly conduct in Fayette County in the Washington Court House Municipal Court, so that would be a violation, if true, a violation of another law.

**{¶25}** * * *

**{¶26}** And, also on September 23rd of this year you consumed alcohol, again allegedly a violation of your supervision.

**{¶27}** You could go back, if any of these violations are found to be true, you could go back to prison for two (2) years, that would be up to me, to serve the balance of your three-year term.

**{¶28}** You have a right to have an Attorney appointed to represent you throughout this process. You also have a right to hire your own, if you would like to do that. So the first question I want to ask is if you have any questions of the Court as to why you're here today?

**{¶29}** DEFENDANT MOOTISPAW: No sir, Your Honor.

**{¶30}** THE COURT: Secondly, would you like to hire an Attorney to represent you in this matter, and/or would you like the Court to appoint one to help you through the case?

**{¶31}** DEFENDANT MOOTISPAW: No sir, Your Honor.

**{¶32}** THE COURT: You're sure?

**{¶33}** DEFENDANT MOOTISPAW: No, sir – Yes, Your Honor.

**{¶34}** THE COURT: Well, if you need to think about that, we're going to give you a minute to think about it.

**{¶35}** DEFENDANT MOOTISPAW: I've spoke with Ms. Barton and I believe I'm ready to proceed.

**{¶36}** THE COURT: All right. Are you under any type of medication at this time?

**{¶37}** DEFENDANT MOOTISPAW: No, sir.

**{¶38}** THE COURT: Are you under any type…Are you under the influence of any drug or alcohol at this time?

**{¶39}** DEFENDANT MOOTISPAW: No, sir.

**{¶40}** THE COURT: And at this point, are you telling the Court that you're knowingly waiving the right to be given an Attorney free of charge at state expense?

**{¶41}** DEFENDANT MOOTISPAW: Yes sir, Your Honor.

**{¶42}** THE COURT: Mr. Jackson, if you'll come forward? I have a form here sir that I'm going to read to you and I want you to read it as well, it's a written waiver of counsel. I, Dennis Mootispaw, the Defendant herein, being now in open court, fully understand that under the laws of the state I have a right to legal representation – and that would be at no charge to you, at state expense – a court appointed attorney, and I do hereby affirmatively waived my right to be represented by counsel in this proceeding. That's saying, by signing this document – if you choose to do so – that you are waiving your right to be represented by either a court appointed attorney, or your right to ask for time to go hire your own, is that clear?

**{¶43}** DEFENDANT MOOTISPAW: Yes sir, Your Honor.

**{¶44}** THE COURT: All right. Do you want to sign the form at this time?

**{¶45}** DEFENDANT MOOTISPAW: Yes sir, Your Honor.

**{¶46}** * * * (Noise on tape heard of papers shuffling and writing occurring.)

**{¶47}** THE COURT: Thank you. And again, Mr. Mootispaw, if you change your mind throughout this process on appointed counsel, just let me know, all right?

**{¶48}** DEFENDANT MOOTISPAW: Yes, sir.

**{¶49}** Based upon our review of that dialogue and the strong presumption against waiver, we conclude that the totality of the circumstances indicate that the court did not obtain a knowing, intelligent, and voluntary waiver of Mootispaw's right to counsel. The court did inform Mootispaw of the nature of the supervision violations and the possible penalties it could impose, i.e., his original prison term. And the court did have Mootispaw sign a written waiver form. However, the court did not inform Mootispaw of the dangers inherent in self-representation, the disadvantages to representing one-self, or any possible defenses to the charges.

**{¶50}** The failure of the court to explain the dangers inherent in self-representation is itself problematic. See *Faretta* at 835; *State v. Wilkerson*, Pike App. Nos. 06CA749, 06CA750, 06CA751, 2008-Ohio-398, at ¶13. We also perceive Mootispaw's comment that he was "ready to proceed" pro se because of a conversation with Barton to raise a red flag. That comment necessitates further inquiries before we can determine whether Mootispaw's waiver was made intelligently.

**{¶51}** When the court told Mootispaw it would give him a minute to think about his waiver of counsel, Mootispaw responded that he spoke about something with Barton and was "ready to proceed." Mootispaw's statement indicates that his decision to waive

counsel may have been based on a discussion he had with a representative of the Adult Parole Authority – an agency with a clearly adversarial stake in the hearing.

{¶52} One inference that can be gleaned from this comment is that Barton told Mootispaw that she would recommend the STAR program and he thereafter operated under the mistaken belief that the hearing was non-adversarial in nature, i.e., a "formality" to get him in to the STAR program. One might also infer that Barton and Mootispaw may have discussed his need for an attorney. The former inference is supported in other portions of the record. Although occurring after the waiver colloquy, the State announced that, in consultation with Barton, it was recommending the STAR program. Additionally, Mootispaw stated "I agree I need medical attention for alcoholism, and I agree that's probably my best alternative out of anything is to seek the help Ms Barton [sic] and Mr. Delph and I all three discussed these issues." Thus, it appears that Mootispaw may have agreed to proceed without an attorney because he operated under a mistaken belief that the court would adopt the State's recommendation for STAR and that he did not require the advice or assistance of counsel to safeguard that result.

{¶53} The State argues that Mootispaw intelligently waived counsel because, prior to the hearing, he successfully got a judge to recuse himself from the case. The record does reflect that while in prison and in advance of filing a pro se motion for judicial release, Mootispaw filed a pro se recusal motion and affidavit. In it, he asked the sitting judge to recuse himself because that judge prosecuted him in 1993 and would be biased. The court granted the motion. We admit that Mootispaw demonstrated some understanding of the criminal justice system by filing the pro se

request for recusal.  But possessing the understanding necessary to file pro se motions does not necessarily demonstrate that Mootispaw also possessed a fuller awareness of the law, the disadvantages of appearing pro se in a hearing on supervision violations, or that he waived counsel with "eyes open" to the possible consequences of such a decision.  See *State v. Irwin*, Cuyahoga App. No. 90772, 2009-Ohio-848, at ¶40; *State v. Richards* (Sept. 20, 2001), Cuyahoga App. No. 78457, 2001 WL 1134880, at *3.

{¶54}  The State also contends that Mootispaw intelligently waived counsel because his criminal history was extensive and "spanned nearly twenty-five pages." The length of Mootispaw's criminal history might indicate that he had some awareness of the value of a professionally trained advocate and could intelligently waive that assistance.  See *Doyle* at ¶15.  But such an inference is only one factor in our analysis of the totality of circumstances that occurred at the hearing.

{¶55}  Finally, the State argues that even if Mootispaw had elected to be represented by counsel, the court could still have sent him to prison.  The State is correct.  Nonetheless, this argument is of no import in determining whether Mootispaw intelligently waived his right to counsel.

{¶56}  In light of the strong presumption against waiver of the fundamental right to counsel, see *Gibson*, supra, at 377, we conclude that the totality of circumstances indicate that the court did not obtain a knowing, intelligent, and voluntary waiver.  There was no warning concerning the dangers of self-representation.  Nor do we find any discussion of possible defenses to the allegations.  And at a minimum, Mootispaw's comment that he was "ready to proceed" pro se because of a conversation with Barton required the court to make further inquiries about Mootispaw's rationale for waiving

counsel on that basis and to assure that he fully understood the potential ramifications of such a decision. Included in that dialogue should be an express warning that the court is not bound by any recommendations resulting from negotiations between the accused and the State. Here, the court did indicate prior to the waiver colloquy that it was "up to me" to determine whether to reimpose the prison sentence. However, that quick reference was worthy of being repeated after the disclosure of negotiations between Mootispaw and the State.

## IV. Voluntariness of Plea

**{¶57}** Our disposition of his first two assignments of error renders this assignment of error is moot and we do not address it. App.R.12(A)(c).

## V. Conclusion

**{¶58}** Having sustained Mootispaw's first and second assignments of error, we reverse the order of the trial court, vacate Mootispaw's pleas, and remand this action for proceedings consistent with this opinion.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.:  Concurs in Judgment and Opinion.
McFarland, P.J.:  Dissents.

For the Court

BY: _____
        William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**