DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from his conviction for aggravated menacing, David K. Horsley asserts that the trial court failed to sufficiently inquire whether he knowingly, intelligently, and voluntarily waived his right to counsel when he chose to represent himself. The totality of the circumstances shows that the trial court adequately advised Horsley of his right to counsel and ensured that he decided to proceed pro se with his "eyes open." The court: (1) explained that the city charged him with aggravated menacing and the range of punishments; and (2) asked if he understood the jury trial process and if he understood that the court would expect him to follow the rules. Horsley stated that he could "confidently" represent himself and claimed that he previously successfully defended himself in Chillicothe Municipal Court. Thus, Horsley's argument is meritless.
 {¶ 2} Next, Horsley contends that prosecutorial misconduct deprived him of a fair trial. He asserts that the prosecutor improperly commented on his failure to testify, improperly appealed to the jury's fears and passions in opening statement and closing argument, and improperly asked the victim a question that required a legal conclusion. Because Horsley failed to object at trial, he waived all but plain error, which does not exist. First, the prosecutor simply commented on the uncontroverted nature of the evidence and the lack of exculpatory evidence. The comments were not improper remarks regarding Horsley's failure to testify. Second, the State did not improperly appeal to the jury's fears and passions when it referred to threats as being a real problem in today's society. The prosecutor's comments were not so inflammatory as to create a danger that the jury convicted Horsley solely as a result of its fears and passions. Finally, for the sake of argument we assume the prosecutor's question concerning whether being hit in the head by a baseball bat qualified as serious harm was improper. However, Horsley cannot demonstrate prejudice because the answer to the question was obvious and could not have improperly influenced the jury's decision. Thus, we affirm the court's judgment.
 {¶ 3} Prior to his trial on charges of aggravated menacing, Horsley requested the court to remove appointed counsel and to allow him to represent himself. He stated that he "has not had any [a]ttorney obtain him a successful outcome in any type of case that [he] has participated in" and that he "believes that there is no one better suited to defend him than himself." He claimed that he "has successfully defended himself previously in the Chillicothe Municipal Court."
 {¶ 4} At the hearing, the court noted that the city charged Horsley with aggravated menacing, a first degree misdemeanor that carries a maximum penalty of six months in jail and a $1,000 fine. The court asked Horsley if he understood that he could receive six months in jail and a $1,000 fine if convicted. Horsley responded affirmatively. The court asked Horsley if he understood the process that must be used in a jury trial, and he stated "yep." The court asked him if he understood that it will expect him to follow the rules of evidence and he stated "yes." When the court asked him whether he understood that the court would expect him to provide it with jury instructions, he stated "I, I," but the rest of his response was "inaudible." The court then explained that the Local Rules required him to provide the court with jury instructions. The court asked if he understood that he would have to question his own witnesses. His response was "inaudible." The court asked if he understood that he could not ask leading questions except upon cross examination and he stated, "correct." The court asked him if he thought he could represent himself and he stated, "confidently." The court subsequently determined that Horsley knowingly, intelligently, and voluntarily waived his right to counsel and granted his request to represent himself.
 {¶ 5} At trial, the victim testified that Horsley approached him in a threatening manner and that Horsley stated: "if I ever see you over here again I'm gona [sic] bust your fucking head open with a baseball bat." The jury found Horsley guilty.
 {¶ 6} Horsley appealed and assigns the following errors:
 First Assignment of Error:
"The trial court deprived Appellant David K. Horsley of his right to counsel under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution by failing to conduct sufficient inquiry to determine whether Appellant knowingly, intelligently, and voluntarily waived his right to appointed counsel and asserted his right to represent himself."
 Second Assignment of Error:
"The prosecution engaged in misconduct that was prejudicial and denied Mr. Horsley his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 16, Article One of the Ohio Constitution."
 I. WAIVER OF THE RIGHT TO COUNSEL {¶ 7} Horsley asserts that the trial court deprived him of his right to counsel by failing to sufficiently inquire whether he knowingly, intelligently, and voluntarily waived this right when he chose to represent himself. In particular, Horsley claims that the record fails to show that the court adequately advised him of (1) the dangers and disadvantages of self-representation, (2) the elements of the offense, and (3) any possible defenses or mitigating factors. Horsley additionally claims that because parts of the transcript are "inaudible," the record is insufficient to establish a valid waiver. He asserts that the transcript must affirmatively show that the court ensured that he knowingly, intelligently, and voluntarily waived his right to counsel.
 {¶ 8} The Sixth Amendment to the United States Constitution provides that criminal defendants shall have the right to the assistance of counsel for their defense. Because a defendant also has the right of self-representation, the defendant may waive the right to counsel and elect to represent himself. See Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562;State v. Martin, 103 Ohio St.3d 385, 2004-Ohio-5471,816 N.E.2d 227, at ¶ 23-24; State v. Gibson (1976), 45 Ohio St.2d 366,345 N.E.2d 399, paragraph one of the syllabus. To establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. Gibson,
paragraph two of the syllabus.[1]
 {¶ 9} Although the trial court need not engage a defendant in any prescribed colloquy before finding that the defendant waived his right to counsel, the court must ensure that the defendant is voluntarily electing to proceed pro se and that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. See State v. Buchanan, Cuyahoga App. No. 80098,2003-Ohio-6851, at ¶ 16. "`To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"Gibson, 45 Ohio St.2d at 377, quoting Von Moltke v. Gillies
(1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309. Furthermore, in order for the defendant to "competently and intelligently * * * choose self-representation, he should be made aware of the dangers and disadvantages of self representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Faretta,422 U.S. at 835, quoting Adams v. United States ex rel. McCann (1942),317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268.
 {¶ 10} No single, definitive test exists in determining whether a defendant voluntarily, knowingly and intelligently waives the right to counsel. See State v. Doyle, Pickaway App. No. 04CA23, 2005-Ohio-4072, at ¶ 10. Generally, we conduct an independent review to see whether the totality of the circumstances demonstrates that the defendant voluntarily, knowingly, and intelligently waived his right to counsel. See id., at ¶ 11. See also, Martin, supra, and Gibson, supra, where the Supreme Court appears to conduct a de novo review but without expressly stating it. In light of the fundamental rights of counsel and self-representation, we believe a de novo review is appropriate.
 {¶ 11} In Faretta, the United States Supreme Court concluded that the defendant knowingly, voluntarily, and intelligently waived his right to counsel and that he should have been allowed to represent himself. In that case, Faretta had previously represented himself in a criminal prosecution and he had a high school education. Faretta explained that he did not want to be represented by the public defender because he believed that the public defender's office had a heavy caseload. The trial court advised Faretta that he was making a mistake, that he would receive no special favors, and that he had to follow normal trial procedure.
 {¶ 12} In Doyle, we determined that the defendant knowingly, intelligently, and voluntarily waived his right to counsel and elected to represent himself. In Doyle, the trial court explained to the defendant the dangers of self-representation. The Court warned him that "it is a dangerous course of action to proceed to trial without a lawyer." The trial court advised the defendant that it would not assist him in presenting his defense and that he would be "held to the same standards as an attorney." The court emphasized that he would be "required to adhere to the rules of evidence the same as an attorney [and] the rules of criminal procedure the same as an attorney." If the defendant had difficulty in complying with these procedural rules, the court warned that it could "not assist [him] in the presentation of [his] case." The defendant, nevertheless, insisted that he be permitted to represent himself. The trial court also asked the defendant if he knew "the maximum penalty in each of these cases" and defendant answered "eighteen months on each charge." Additionally, the defendant had prior experience with the criminal justice system. The defendant nonetheless asserted that the court failed to explain the "nature of the charges" against him or "possible defenses." We concluded that the record showed that the defendant was aware of the general nature of the charges against him and that the defendant knew of an alibi defense.
 {¶ 13} Here, the totality of the circumstances shows that Horsley knowingly, intelligently, and voluntarily waived his right to counsel and elected to represent himself. The court explained that he was charged with aggravated menacing. The court explained the range of punishments and asked Horsley if he understood. The court asked Horsley if he understood the jury trial process and if he understood that the court would expect him to follow the rules. The court asked him if he understood that he could not ask leading questions except upon cross-examination. Horsley indicated that he understood all of the above. Horsley advised the court that he could "confidently" represent himself. Moreover, Horsley, like the defendant inFaretta, is no stranger to the legal system and self-representation. He claimed to have successfully defended himself previously in the Chillicothe Municipal Court. All of the above factors help show that Horsley knew what he was doing and that he made his choice with his eyes open. See Faretta.
 {¶ 14} While the court may not have explained the exact nature of the charges or the possible defenses, the record shows that Horsley had a general understanding of the charges and of possible defenses. See Doyle (upholding defendant's waiver of counsel even though trial court did not explain the nature of the charges or possible defenses). Moreover, our analysis focuses on the totality of the circumstances, not whether the trial court recited a precise list of factors. See id. Thus, because we determined that the totality of the circumstances demonstrates that the court sufficiently ascertained that Horsley knowingly, intelligently, and voluntarily waived his right to counsel, the court's failure to explicitly discuss two of the factors identified in Von Moltke does not require a reversal.
 {¶ 15} We disagree with Horsley that the court's failure to advise him that "it is a dangerous course of action to proceed to trial without a lawyer" means that he did not knowingly, intelligently, and voluntarily waive his right to counsel. Nothing requires the court to use these exact words. While we approved of this cautionary instruction in Doyle, we did not hold that it is a prerequisite to a valid waiver of the right to counsel. While a bright-line would be easier to apply, we continue to believe a balancing test focusing upon the totality of the circumstances is more appropriate.
 {¶ 16} Horsley's argument that the transcript, with its "inaudible" portions, does not affirmatively show that he waived his right to counsel is also meritless. Even in criminal cases, an appellant must attempt to correct an insufficient record by using one of the options available under App.R. 9. See In reB.E., 102 Ohio St.3d 388, 2004-Ohio-3361, 811 N.E.2d 6, at ¶ 14;State v. Keenan (1998), 81 Ohio St.3d 133, 139, 689 N.E.2d 929;State v. Brewer (1990), 48 Ohio St.3d 50, 60-61,549 N.E.2d 491. "[A]lthough it is the court's responsibility in the first place to record the proceedings, the appellant, if possible, should attempt to use one of the procedures outlined in App.R. 9 to supplement the record for appeal purposes." In re B.E., at ¶ 15.
 {¶ 17} Moreover, we assume a complete transcript would have indicated Horsley had some reservation about the questions that resulted in the inaudible responses. Nonetheless, the totality of the circumstances indicates Horsley made the choice with his "eyes open" and was adamant about exercising that right. The record indicates nothing short of the court's absolute refusal to allow it would have stopped Horsley from proceeding pro se. Thus, Horsley cannot rely upon the "inaudible" parts of the transcript to support a reversal of the trial court's judgment.
 {¶ 18} Accordingly, we reject Horsley's first assignment of error.
 II. PROSECUTORIAL MISCONDUCT {¶ 19} In his second assignment of error, Horsley contends that the prosecutor engaged in misconduct by: (1) improperly commenting in closing argument on Horsley's failure to testify; (2) appealing to the jury's fears and passions in opening statement and closing argument; and (3) improperly asking the victim a question requiring a legal conclusion concerning the elements of the offense. He asserts that each instance of misconduct was prejudicial and that the cumulative effect of the misconduct deprived him of a fair trial.
 A. Standard for Evaluating Prosecutorial Misconduct Claims {¶ 20} The Supreme Court of Ohio has admonished us that prosecutorial misconduct constitutes reversible error only in "`rare instances.'" State v. Keenan (1993), 66 Ohio St.3d 402,405, 613 N.E.2d 203, quoting State v. DePew (1988),38 Ohio St.3d 275, 288, 528 N.E.2d. 542. "The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." State v. Jackson (2001),92 Ohio St.3d 436, 441, 751 N.E.2d 946. "The test for prejudice regarding prosecutorial misconduct * * * is `"whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."'" State v. Hartman
(2001), 93 Ohio St.3d 274, 295, 754 N.E.2d 1150 (quoting Statev. Hessler (2000), 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 andState v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883). To establish prejudice, an accused must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different.State v. Loza (1994), 71 Ohio St.3d 61, 83, 641 N.E.2d 1082. An appellate court must examine the prosecution's closing argument in its entirety to determine whether the remarks prejudiced the defendant. State v. Treesh (2001), 90 Ohio St.3d 460, 466,739 N.E.2d 749; State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 203. It amounts to a de novo independent review.
 {¶ 21} During closing arguments, the prosecution is given wide latitude to convincingly advance its strongest arguments and positions. See State v. Phillips (1995), 74 Ohio St.3d 72, 90,656 N.E.2d 643; Treesh, 90 Ohio St.3d at 466. Nevertheless, the prosecutor must avoid going beyond the evidence presented to the jury in order to obtain a conviction. See, e.g., State v. Smith
(1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "[P]rosecutors must be diligent in their efforts to stay within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts." State v. Fears (1999), 86 Ohio St.3d 329, 332,715 N.E.2d 136.
 {¶ 22} When in a case like this, a defendant fails to object to the prosecutor's alleged misconduct, he waives all but plain error. See Crim.R. 52; State v. Hartman (2001),93 Ohio St.3d 274, 294, 754 N.E.2d 1150; State v. Ballew (1996),76 Ohio St.3d 244, 254, 667 N.E.2d 369. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See, e.g., State v. Barnes (2002),94 Ohio St.3d 21, 27, 759 N.E.2d 1240; State v. Hill (2001),92 Ohio St.3d 191, 196, 749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. See, e.g., State v. Jackson (2001), 92 Ohio St.3d 436, 438,751 N.E.2d 946; State v. Sanders (2001), 92 Ohio St.3d 245, 263,750 N.E.2d 90.
 B. Failure to Testify {¶ 23} Horsley contends that the following comments constituted improper remarks regarding his failure to testify: (1) "Basically the uncontroverted evidence is that Mr. Pleshaw . . ."; (2) "He's never had any contact with Mr. Horsley, there's no testimony that he didn't deliver to the house those three times . . ." (3) "There has been no testimony, what so ever, that contradicts what [Pleshaw] says."; (4) "Absolutely no evidence what so ever to contradict what [Pleshaw's] testified to occurred." Horsley asserts that "[t]he frequency of these comments strongly suggests that Mr. Horsley's failure to testify was an underlying theme of the City's case." He claims that the prosecutor's comments "necessarily refers to Mr. Horsley's decision not to testify." He argues the "comments also had the effect of inviting the jury to shift the burden of proof from the City to the defense." Horsley additionally complains that the court's failure to instruct the jury regarding his decision not to testify compounded the prosecutor's alleged misconduct.
 {¶ 24} A prosecutor may not comment on a defendant's failure to testify. Griffin v. California (1965), 380 U.S. 609,85 S.Ct. 1229, 14 L.Ed.2d 106; State v. Fears (1999),86 Ohio St.3d 329, 336, 715 N.E.2d 136. However, "the prosecution is entitled to comment on [a defendant's] failure to offer evidence or to call witnesses other than the defendant." State v.Simpson, Montgomery App. No. 19797, 2004-Ohio-669, at ¶ 65; see, also, State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193, ("Defendant further argues that the prosecutor had no right to draw an unfavorable inference from the defense's failure to call [a particular witness], because the prosecutor had an equal chance to call her if he thought her testimony would aid the state. However, defendant could have easily pointed that out to the trier of fact."). The test for prosecutorial misconduct in referring to a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v.Webb (1994), 70 Ohio St.3d 325, 328, 638 N.E.2d 1023, quotingKnowles v. United States (C.A.10, 1955), 224 F.2d 168, 170.
 {¶ 25} A prosecutor's comment that the evidence is uncontradicted or uncontroverted does not constitute misconduct. See State v. Madsen, Cuyahoga App. No. 82399, 2004-Ohio-4895, citing State v. Wade (1978), 53 Ohio St.2d 182,373 N.E.2d 1244. "`The prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case.'" State v. Watson, 61 Ohio St.3d at 9, 572 N.E.2d at 106, quoting State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906; see, also, Lockett v. Ohio (1978), 438 U.S. 586,595, 98 S.Ct. 2954, 57 L.Ed.2d 973. A jury would not "naturally and necessarily" interpret such comments as comments on an accused's failure to testify. Watson; see, also, State v.Elliott (1993), 91 Ohio App.3d 763, 774, 633 N.E.2d 1144. As the court explained in State v. Collins (2000), 89 Ohio St.3d 524,527-528, 733 N.E.2d 1118:
"It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case.State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193,616 N.E.2d 909, 916; State v. Williams (1986), 23 Ohio St.3d 16, 20,23 OBR 13, 17, 490 N.E.2d 906, 911; State v. Petro (1948),148 Ohio St. 473, 498, 36 O.O. 152, 162, 76 N.E.2d 355, 367; andState v. Champion (1924), 109 Ohio St. 281, 289-290,142 N.E. 141, 143-144. Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent. A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify. State v. Thompson (1987), 33 Ohio St.3d 1, 4,514 N.E.2d 407, 411, citing Griffin v. California (1965),380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, 32 O.O.2d 437. Nevertheless, the prosecutor is not precluded from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense. See State v. Watson (1991),61 Ohio St.3d 1, 9, 572 N.E.2d 97, 105-106. Neither must the state, in order to satisfy its own burden of proof, disprove every speculative set of possibly exculpatory circumstances a defendant can suggest, nor refrain from arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence."
 {¶ 26} In this case, the prosecutor's comments that the evidence was uncontroverted and that there was no exculpatory evidence were not improper comments on Horsley's failure to testify. The prosecutor merely commented on the absence of evidence to dispute the State's version of the events.
 {¶ 27} Horsley's argument that the state's comments effectively shifted the burden of proof is also meritless. While the prosecution may not attempt to shift the burden of proof upon a defendant, see State v. Thompson (1987), 33 Ohio St.3d 1,514 N.E.2d 407, the prosecutor may comment during closing arguments upon the lack of exculpatory evidence. See D'Ambrosio;Williams. That is exactly the situation here. See also, Statev. Sparks, Union App. No. 14-01-03, 2001-Ohio-2140 (stating that the prosecutor's comments that called the jury's attention to the fact that the appellant had not presented testimony from any witnesses were not improper and did not shift the burden of proof to the defense).
 {¶ 28} We further reject Horsley's contention that the court's failure to instruct the jury regarding his decision not to testify compounded any misconduct. Horsley failed to request an instruction regarding his decision not to testify. Thus, he cannot complain now about the lack of the instruction. See Crim.R. 30(A). Furthermore, because we concluded that the prosecutor did not engage in misconduct, there is no error to be compounded.
 C. Passions and Prejudice {¶ 29} Horsley asserts that the prosecutor improperly appealed to the jury's passions and prejudices by stating in opening statements: "in today's time, threats should be taken seriously, and this was a serious threat," and in closing argument, "this [making a threat] is a serious issue today." Horsley asserts that the prosecutor's "comments constitute an improper appeal to the climate of fear that pervades many segments of our community." He contends that the comments were prejudicial "because there is more than a reasonable likelihood that a juror would have accepted the prosecutor's invitation to vote for a more secure community by casting a vote of guilty in this case."
 {¶ 30} "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647,94 S.Ct. 1868, 40 L.Ed.2d 431. Arguments must be reviewed in their entirety to determine whether the disputed remarks were prejudicial. For a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice."State v. Williams (1986), 23 Ohio St.3d 16, at 20,490 N.E.2d 906.
 {¶ 31} Here, the prosecutor's comments were not so inflammatory that the jury's decision was a product solely of passion and prejudice. Moreover, the prosecutor's comments, as a whole, did not appeal to the jury's passions or prejudices. The evidence that the prosecutor presented at trial established the elements of the offense and we see no danger that the jury convicted based solely upon an improper appeal to its passions and prejudices.
 D. Legal Conclusion {¶ 32} Finally, Horsley argues that the prosecutor asked the victim an improper question to prove that the victim was threatened with serious harm. The prosecutor asked the victim, "[y]ou take a threat of being hit in the head, or have your head bust[ed] open with a baseball bat * * * in your mind does that constitute a serious physical harm or injury?" Horsley asserts that the question was improper because it called for a legal conclusion.
 {¶ 33} Even if the question was improper, Horsley cannot demonstrate prejudice. As the city asserts, the victim's "testimony was not offering anymore than what was obvious to a juror * * *. There is no reason to believe that the jury would not have figured out that having your head `busted open with a baseball bat' is a serious injury and the outcome would have been the same even without [this] testimony." Thus, because Horsley's testimony did not lead the jury to a conclusion it would not have otherwise reached, it did not prejudice Horsley's case.
 {¶ 34} Accordingly, we overrule Horsley's second assignment of error and affirm the court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. McFarland, J.: Concur in Judgment and Opinion.
[1] Crim.R. 44 addresses the right to counsel and its waiver, but compliance with that rule is not an issue here.