[Cite as *State v. Nichols*, 2020-Ohio-4362.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

             Plaintiff-Appellee,          :

v.                                               :

Andrew J. Nichols,                               :

             Defendant-Appellant.         :

Nos. 19AP-113
(C.P.C. Nos. 18CR-2023)
and 19AP-116
(C.P.C. No. 18CR-3359)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on September 8, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Blaise G. Baker*, for appellant.

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Andrew J. Nichols, appeals from judgments of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of involuntary manslaughter, corrupting others with drugs, trafficking in drugs, tampering with evidence, and abuse of a corpse. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On April 27, 2018, in case No. 18CR-2023, appellant[1] was indicted on one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony, and one count of gross abuse of a corpse, in violation of R.C. 2927.01, a fifth-degree felony. The

---

[1] Appellant's wife, Angela Nichols, was also indicted for tampering with evidence and gross abuse of a corpse. Her case is not the subject of this appeal.

abuse of a corpse charge alleged appellant treated a human corpse in a way that would outrage reasonable community sensibilities. The indictment alleged that each of the foregoing offenses occurred on or about April 16, 2018. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3} Subsequently, on July 13, 2018, in case No. 18CR-3359, appellant was indicted on one count of involuntary manslaughter, in violation of R.C. 2903.04, a first-degree felony, one count of corrupting another with drugs, in violation of R.C. 2925.02, a second-degree felony, and one count of trafficking in cocaine, in violation of R.C. 2925.03, a fifth-degree felony. The involuntary manslaughter charge alleged appellant caused the death of Hanna D. Geiger as a proximate result of committing the felony offense of corrupting another with drugs and/or trafficking in cocaine. The corrupting another with drugs count alleged appellant knowingly, by any means, administered or furnished cocaine to Hanna Geiger and caused serious physical harm. The trafficking in cocaine count alleged appellant sold or offered to sell cocaine. The indictment alleged that each of the foregoing offenses occurred on or about April 16, 2018. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 4} Without objection, the cases were consolidated for trial, and the dates of the offenses were amended to reflect a time frame of March 7 through April 16, 2018. (Tr. at 4, 17-20, 390-96.) On January 18, 2019, the consolidated cases came on for trial by jury, at which the following evidence was presented.

{¶ 5} At trial, Ashley Wilson testified she purchased the home at 1087 High Street in Harrisburg, Ohio, in Franklin County in fall 2017, but she did not move in immediately because tenants occupied the premises. (Tr. at 63-65.) The tenant in the downstairs part of the house was occupied by Darlene Lash, who is the mother of appellant. (Tr. at 65.)

{¶ 6} On April 14, 2018, Wilson used the backyard of the premises to host a birthday party for her son. (Tr. at 65-66.) At one point, Wilson saw appellant exit the downstairs part of the house being rented by his mother, approach a white car that had driven up, hand the driver some money, and receive a baggie from the man driving the car. (Tr. at 66-67.)

{¶ 7} At this point, Wilson went to the house and knocked on the door, and Lash answered. (Tr. at 67-68.) Wilson told Lash that appellant must vacate the premises within

24 hours and that Wilson would be back to inspect the premises within 24 hours to ensure appellant and his wife, who was also living there, had left. (*Id.*) Wilson subsequently gave appellant and his wife an additional day to vacate the premises. (Tr. at 68-69.)

{¶ 8} On April 16, 2018, Wilson arrived at the premises to make her inspection and Lash let her inside. (Tr. at 70.) Wilson went to the basement and noticed that it was empty except for a black trash bag that had duct tape wrapped around it. (Tr. at 70-71.) Wilson touched the odd-looking bag and felt what appeared to be a kneecap. (Tr. at 71.) Wilson was shocked. (*Id.*) She took a picture of the bag, went upstairs, exited the house and called 911, telling police she thought there was a body in the basement. (Tr. at 71-72.) A sheriff's deputy then came to the scene to meet her. (Tr. at 72.)

{¶ 9} Sheriff Deputy Terry Brown testified that he responded to 1087 High Street to investigate the homeowner's concern about a possible body in the basement. (Tr. at 89.) Brown found the trash bag, touched it, and determined it was "kind of heavy." (Tr. at 91.) Upon cutting open the top of the bag with his knife, a person's head appeared. (Tr. at 91.) At this point, Brown broadcast for assistance for "a 16, which is a DOA,[2] a police term." (Tr. at 91.) Subsequently, the scene was processed by Bryan White of the Bureau of Criminal Investigation ("BCI") (Tr. at 97 et seq.); Amy Wanken of BCI (Tr .at 155 et seq.); and Jerry Lanfear of BCI. (Tr. at 180 et seq.)

{¶ 10} It was subsequently determined that the body found in the basement was that of Hanna D. Geiger, and at trial, the parties stipulated that "the identity of the 20-year-old female found by police and medics at the scene located at 1087 High Street, Harrisburg, Ohio, 43126, on April 16, 2018 and pronounced deceased by Pleasant Township Medic No. 231 is that of Hanna D. Geiger. " (Tr. at 200.)

{¶ 11} Detective Andrew Harper of the Franklin County Sheriff's Office testified that he and Detective Jason Evans interviewed appellant on the evening of April 16, 2018 and the early morning hours of April 17, 2018 after Hanna Geiger's body was discovered. (Tr. at 284, 299, 305-06.) After being advised of his *Miranda* rights, appellant agreed to continue speaking to detectives. (Tr. at 307-08.) The recording of the interview was played at trial. In the recording, appellant admitted as follows.

---

[2] "DOA" means dead on arrival. (Tr. at 91.)

{¶ 12} Appellant and Hanna Geiger met while both were at Sun Behavioral in Columbus during February 2018. (Tr. at 309-10.)[3] On the evening of the day appellant was released from Sun Behavioral, March 7, 2018, appellant contacted Hanna by telephone. (Tr. at 310.) Hanna drove her Honda Civic over to the house where appellant was staying with his mother that same night and asked appellant if he knew anyone from whom she could get crack. (Tr. at 310, 315, 317.) Hanna appeared to be high and told him she had been smoking crack since she got out of the hospital. (Tr. at 342-43.)

{¶ 13} Appellant used Hanna's phone to use Facebook Messenger to contact a person named Don Turner and order an "eight-ball"[4] of cocaine. (Tr. at 312, 341-42, 345.) When Don brought the cocaine, appellant paid $200 for it and he and Hanna split it up. (Tr. at 341-43.) At first, they were just smoking the cocaine, but appellant stated he liked to "shoot it" too, and Hanna watched him as he was shooting up and then asked him to shoot her with it. (Tr. at 310-11, 323-24.) Appellant stated he told her he would not do it to her, that "I ain't going to turn you onto doing it because I wish [I] never did it the first time myself." (Tr. at 310-11.) Appellant admitted later in the interview that shooting-up cocaine "is a lot more intense." (Tr. at 325.) But Hanna continued asking him about it, and eventually, despite his asking her to please not do it, she "ended up making the shot * * * and then she did. And she just started seizing and (unintelligible), and I was trying to kind of hold her on her side to keep her from choking." (Tr. at 311.) Appellant stated Hanna used his rig[5] to shoot up. (Tr. at 325.)

{¶ 14} Appellant stated Hanna began having ill effects almost immediately upon her injecting herself in her right arm. (Tr. at 344-45.) Appellant stated it crossed his mind to call for help, but it "happened so quick" and "she was gone." (Tr. at 311.) He further stated he "just froze" and was "scared" and "didn't know what to do" and that he knew she had died. (Tr. at 312-14.) Appellant then checked her pulse and, knowing she was dead, carried her body to the basement. (Tr. at 314.)

---

[3] The parties stipulated appellant was released from Sun Behavioral on March 7, 2018 and Hanna Geiger was released from Sun Behavioral on February 28, 2018. (Tr. at 201.)

[4] An "eight-ball" is a term used when buying a drug and is an eighth of an ounce of the drug, which is approximately three-and-one-half grams. (Tr. at 352.)

[5] A "rig" is a syringe. (Tr. at 351.)

{¶ 15} About one week later, appellant's wife, Angela Nichols, returned from California where she had been in rehab and he told her about Hanna.  (Tr. at 318.)  It was Angela who helped him wrap Geiger's body in trash bags. (Tr. at 321-22.)  Appellant and Angela drove Hanna's Honda Civic to a neighborhood near his grandmother's house on the west side, and they threw Hanna's purse and cell phone into a trash can at a gas station in Darbydale. (Tr. at 319-21.) They also threw the syringe that appellant and Hanna had used on the night she died in the same trash can at the gas station. (Tr. at 325.)

{¶ 16}  As noted previously, the parties stipulated that "the identity of the 20-year-old-female found by police and medics at the scene located at 1087 High Street, Harrisburg, Ohio, 43126, on April 16, 2018 and pronounced deceased by Pleasant Township Medic No. 231 is that of Hanna D. Geiger."  (Tr. at 200.)  The parties further stipulated that "[t]his is the same individual that was examined at the Franklin County Coroner's office on April 17, 2018 by Tanner L. Bartholow, M.D.  Dr. Bartholow completed a coroner's report and autopsy report regarding this individual, which is marked as State's Exhibit F."  (Tr. at 200.)

{¶ 17}  The coroner determined that Hanna's death was caused by acute cocaine toxicity.  (State's Ex. F.)  Dr. John Daniels, a deputy coroner/forensic pathologist in the coroner's office, reviewed the coroner's report and autopsy report prepared by Dr. Bartholow and testified that the toxicology report showed a very high level of cocaine consistent with ingestion through injection.  (Tr. at 202, 219, 226.)  Dr. Daniels further testified the toxicology report indicated that Hanna lived for several minutes, perhaps 10 to 15 minutes, while her body processed the cocaine, although she could have been unconscious during that time.  (Tr. at 222.) Hanna would not have died had she not ingested the cocaine.  (Tr. at 223.)

{¶ 18}  After the jury had retired to commence deliberations, defense counsel moved for a mistrial based on certain remarks made by the prosecutor during closing arguments in rebuttal, the particulars of which are outlined in our discussion of the first assignment of error.  (Tr. at 451-52.)  After listening to arguments from defense counsel and the prosecutor, the trial court denied the motion.  (Tr. at 453.)

{¶ 19}  At the conclusion of trial, the jury found appellant guilty on all five counts in the indictments.  On February 25, 2019, the trial court issued two judgment entries

consistent with the jury's verdict and imposed a sentence consisting of a mix of consecutive and concurrent prison sentences totaling six years.

{¶ 20} This timely appeal followed.

## II.  Assignments of Error

{¶ 21} Appellant asserts the following three assignments of error for our review:

> [I.] The trial court violated Defendant-Appellant's rights to due process and a fair trial, and abused its discretion, when it failed to declare a mistrial after the prosecutor's misconduct during closing arguments.

> [II.] The trial court erred when it entered judgment against Defendant-Appellant when the evidence presented was insufficient to establish that the acts of Defendant-Appellant were the proximate cause of the Decedent's death and the judgment was against the manifest weight of the evidence.

> [III.] The trial court erred when it failed to merge all of Defendant-Appellant's offenses.

## III.  Discussion

### A.  First Assignment of Error - Mistrial

{¶ 22} In his first assignment of error, appellant argues that the trial court abused its discretion when it denied his motion for mistrial based on the prosecutor's alleged misconduct during closing arguments.  We disagree.

{¶ 23} An appellate court reviewing a trial court's decision on a motion for mistrial defers to the judgment of the trial court, as it is in the best position to determine whether circumstances warrant a mistrial. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). Accordingly, we review a trial court's decision on a motion for mistrial for an abuse of discretion. *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173, 182 (1987).  The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).  An abuse of discretion involves views or actions " 'that no conscientious judge, acting intelligently, could honestly have taken.' "  *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130, quoting *State ex rel. Wilms v. Blake*, 144 Ohio St. 619, 624 (1945).

{¶ 24} " 'A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the

prosecution are adversely affected.' " *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 52, quoting *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist.1988). Rather, a trial court should only declare a mistrial when "the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). In determining whether a criminal defendant was deprived of a fair trial, an appellate court must determine whether, absent the error or irregularity, "the jury would have found the [defendant] guilty beyond a reasonable doubt." *Aleshire* at ¶ 42, citing *State v. Maurer*, 15 Ohio St.3d 239, 267 (1984).

{¶ 25} As noted above, in this case, counsel for appellant moved for a mistrial based on prosecutorial misconduct during closing argument. In the context of closing arguments, the test for prosecutorial misconduct is "whether 'the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' " *State v. Fudge*, 10th Dist. No. 16AP-821, 2018-Ohio-601, ¶ 48, quoting *State v. Smith,* 14 Ohio St.3d 13, 14 (1984). In determining whether allegedly improper remarks resulted in prejudice to the defendant, a reviewing court must consider " '(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.' " (Further quotations and citations omitted.) *Id.* at ¶ 47, quoting *Aleshire* at ¶ 42. Furthermore, because isolated instances of prosecutorial misconduct are deemed harmless, " ' "the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." ' " *Id.* at ¶ 48, quoting *State v. Muhleka,* 2d Dist. No. 19827, 2004-Ohio-1822, at ¶ 85, quoting *State v. Stevens*, 2d Dist. No. 19572, 2003-Ohio-6249, ¶ 34.

{¶ 26} " '[P]rosecutors are entitled to considerable latitude in closing argument.' " *Fudge* at ¶ 48, quoting *Muhleka* at ¶ 85, citing *State v. Ballew,* 76 Ohio St.3d 244, 255 (1996). During closing argument, the prosecutor is free to comment on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " (Further citations omitted.) *Id.*, quoting *Muhleka* at ¶ 85, citing *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). The prosecutor is likewise free to "state his or her opinion if it is based on the evidence presented at trial." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 213.

{¶ 27} Furthermore, where a defendant has failed " 'to object to the prosecutor's alleged misconduct, he waives all but plain error.' " *Fudge* at ¶ 49, quoting *Wellston v.*

*Horsley*, 4th Dist. No. 05CA18, 2006-Ohio-4386, ¶ 22, citing Crim.R. 52; *State v. Hartman*, 93 Ohio St.3d 274, 294 (2001). Notice of plain error under Crim.R. 52(B) " 'is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.*, quoting *Wellston* at ¶ 22. Furthermore, " '[p]lain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise.' " *Id.*, quoting *Wellston* at ¶ 22.

{¶ 28} Moreover, where the trial court has instructed the jury the evidence did not include opening statements or closing arguments of counsel or any other statement made by counsel during trial, and that "opening statements and closing arguments are designed to assist you but they are not evidence," it is presumed that "the jurors followed these instructions and that the verdict was not, therefore, based on the content of the closing arguments." *Fudge* at ¶ 52, citing *State v. Thompson*, 3d Dist. No. 7-16-10, 2017-Ohio-792, ¶ 26, citing *Pang v. Minch*, 53 Ohio St.3d 186, 187 (1990).

{¶ 29} In this case, as noted previously, after the jury had retired to commence deliberations, defense counsel moved for a mistrial based on the prosecutor's alleged misconduct during closing arguments. Defense counsel specifically averred:

> Your Honor, I try to be restrained during closing arguments, but particularly when counsel in rebuttal makes statements, it becomes even more difficult. But I would note my objection and even move for a mistrial based upon comments that were made on rebuttal. First of all, one comment was made to the jurors that they, too, should be outraged. And that was made in response to or during her explanation about the community standards. But that's an invitation for this jury to decide this case based upon emotion and not the facts or the law in this case, which specifically they are told not to do. Another objection I have is several times in her argument she stated that it doesn't matter that Hanna injected herself. Well, so she is asking the jury to again ignore the evidence. The jurors' responsibility is to consider all of the evidence and the fact that that particular comment or the other point of my presentation that it is not in the jury instructions is still relevant to their deliberations, both in terms of evaluating the evidence and specifically in weighing whether or not the death was the proximate cause of my client's conduct versus that of Hanna's conduct. So for those reasons, we make our objections and we would make our motion.

(Tr. at 451-52.)

{¶ 30} After listening to arguments from both the prosecutor and defense counsel, the trial court denied the motion for a mistrial, stating:

> I instructed the jury prior to taking evidence and during my instructions that closing statements of counsel are not evidence and should not be considered by them as evidence. I will deny your motion for a mistrial. I will note your objection.

(Tr. at 453.)

{¶ 31} A review of the record reveals that during rebuttal closing arguments, the prosecutor stated to the jury, "[d]isturbing photographs, I hope they are disturbing to you. They should be disturbing to you. They should be disturbing and y'all should be outraged." (Tr. at 436.) Defense counsel did not object to the foregoing remarks at the time they were made.

{¶ 32} The prosecutor also stated to the jury, "[t]he Judge has given you all of the law on these jury instructions. Right? That is the law that you've got to follow. And not one place in here will you find if Hanna Geiger, the victim, injected herself or because she wanted the drugs, that that means he is not culpable. You won't find that in here." (Tr. at 439.) Defense counsel lodged a general objection to the foregoing statement,[6] but the objection was overruled by the trial court. (Tr. at 439.)

{¶ 33} The prosecutor continued rebuttal closing arguments and informed the jury, "[a]gain, I never once said that she didn't inject herself. And you know, it doesn't matter. At the end of the day it doesn't matter if she injected it, smoked it, ate it. He still provided that cocaine to her." (Tr. at 443.) Defense counsel made no objection to the foregoing remarks at the time the prosecutor made them.

{¶ 34} The prosecutor also stated to the jury, "[y]ou are here to judge the facts and determine whether the State has proved beyond a reasonable doubt that the defendant, Andrew Nichols -- not Hanna Geiger. She's not on trial here. She is the victim in this case." (Tr. at 444.) Defense counsel objected to the prosecutor's use of the word "victim," but the objection was overruled by the trial court. (Tr. at 444.)

---

[6] It is unclear from the transcript to which part or parts of the statement counsel was specifically objecting; however, appellant stated in his appellate brief that the objection was premised on the use of the word "victim" in describing Hanna Geiger.

{¶ 35} Continuing rebuttal closing argument, the prosecutor informed the jury, "[y]ou have to decide this case. You follow the law, and it is did we prove our case beyond a reasonable doubt. I submit to you we did. And now he just wants to blame the victim, Hanna." (Tr. at 446.) Defense counsel again objected to the use of the word "victim" by the prosecutor, but the objection was overruled by the trial court. (Tr. at 446-47.)

{¶ 36} Upon consideration, we find the trial court did not abuse its discretion in refusing to grant appellant's motion for mistrial premised on the foregoing remarks made by the prosecutor during rebuttal closing argument. First, regarding appellant's contention that the prosecutor improperly invited the jury to decide the case based on emotion rather than the facts of the case or the applicable law by stating to the jurors that they should be "outraged" by what they saw in the photographs presented at trial, we reiterate that defense counsel made no objection to this remark at the time it was made. Accordingly, he has waived all but plain error on this point. *Fudge* at ¶ 49.

{¶ 37} Furthermore, we find no improper conduct on the part of the prosecutor in commenting that the jurors should be outraged in viewing the photographs. This is so, because "outrage" is an element of the offense of gross abuse of a corpse,[7] one of the counts with which appellant had been charged. When this comment is viewed in context with the indictment, the jury instructions, and the prosecutor's earlier closing argument on this point (Tr. at409-11), it is apparent that the comment was meant to reference the element of outrage included in the offense. (Tr. at 409-11.) As the prosecutor had to prove this element, it was not improper to urge the jury that they should be outraged by the photographs they viewed because the photographs were direct evidence of the treatment of Hanna Geiger's body by appellant. Put another way, this remark by the prosecutor was an entirely fair one because it was based on " ' "what the evidence has shown and what reasonable inferences may be drawn therefrom." ' " (Further citations omitted.) *Fudge* at ¶ 48, quoting *Muhleka* at ¶ 85, quoting *Lott* at 165. The jurors would have understood the prosecutor's comment in this context and they would not have taken the prosecutor's comment to be an invitation to abandon their responsibility to decide the case based on the law and the facts and instead improperly decide the case based on emotion. There was no

---

[7] R.C. 2927.01(B) provides that "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities."

misconduct on the part of the prosecutor in urging the jurors to be outraged by the photographs of Hanna's body, and there was no error, plain or otherwise, on the part of the trial court in denying the motion for mistrial on this basis.

{¶ 38}  Next, we turn to appellant's complaint that the prosecutor improperly used the word "victim" to describe Hanna Geiger three times during rebuttal closing argument. As set forth above, defense counsel lodged an objection each time the prosecutor referred to Hanna Geiger as a victim, and the trial court overruled each objection.  In support of appellant's argument that the prosecutor's use of the term "victim" during closing argument substantially affected the jurors' impartiality in evaluating the evidence to the prejudice of appellant, he cites to *State v. Almedom*, 10th Dist. No. 15AP-852, 2016-Ohio-1553, in which this court determined, sua sponte, that defense counsel in that case had been ineffective by failing to object to repeated references made by the trial judge to the child witnesses as "victims."

{¶ 39}  We find *Almedom* readily distinguishable from the instant matter.  First and foremost, in *Almedom*, the offending references to the witnesses as "victims" were made by the trial judge, not the prosecutor.  While a trial judge must remain detached and neutral in any matter before the court, the prosecutor is not constrained by any such obligation of neutrality. *State v. Harper*, 10th Dist. No. 01-AP-201, 2001-Ohio-8875.  Secondly, in *Almedom,* the improper references were made throughout the entire trial.  Here, the prosecutor's references to Hanna Geiger as a "victim" were made only during rebuttal closing argument.  As discussed above, during closing argument, the prosecutor is free to comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom."  (Internal quotations and citations omitted.) *Fudge* at ¶ 48.  In our view, the prosecutor's references to Hanna Geiger as a "victim" entailed fair comment on what the evidence had shown and were not improper.  Thus, there was no misconduct on the part of the prosecutor in referring to Hanna Geiger as a victim, and there was no error on the part of the trial court in denying the motion for mistrial on this basis.

{¶ 40} Finally, we address appellant's contention that, in referencing the court's instructions to the jury, the prosecutor improperly asked the jury to disregard evidence by stating it did not matter that Hanna Geiger injected herself with the cocaine for purposes of determining whether appellant was culpable in Hanna's death.  We reiterate that defense

counsel made no objection to this remark at the time it was made.[8]  Accordingly, he has waived all but plain error on this issue.  *Fudge* at ¶ 49.

{¶ 41}  Furthermore, we do not agree that the prosecutor engaged in misconduct by asserting that for purposes of determining appellant's culpability in Hanna Geiger's death, whether Hanna injected the narcotics herself was of no import.  Instead, we find the prosecutor was appropriately arguing the legal insignificance of this evidence as it pertained to the jury's consideration of the involuntary manslaughter charge.  This is so because pursuant to the court's instructions, appellant was culpable in Hanna's death if the jury found that appellant provided Hanna with the cocaine.  Put another way, the fact that Hanna injected herself would not negate appellant's culpability.  Indeed, the prosecutor conceded that Hanna injected herself in explaining why this fact did not negate appellant's culpability or provide a legal defense to the charge of involuntary manslaughter.  (Tr. at 439, 443.)  In short, Hanna's act of self-injection "would not change the basic fact that the victim took the drugs furnished by [the defendant] and died as a result." *State v. Price*, 8th Dist. No. 107096, 2019-Ohio-1642, ¶ 89.  The prosecutor did not improperly tell the jury that it did not matter if Hanna injected herself, and there was no error, plain or otherwise, on the part of the trial court in denying the motion for mistrial on this basis.

{¶ 42}  Moreover, in considering all of appellants' assertions of alleged prosecutorial misconduct during rebuttal closing argument, we observe the trial court instructed the jury "[t]he evidence does not include the indictment or opening statements or closing arguments of counsel.  The opening statements and closing arguments of counsel are designed to assist you.  They are not evidence."  (Jury Instr. at 2.)  Thus, we presume that the jurors followed these instructions and the verdict was not based on the content of the closing arguments.  *Fudge* at ¶ 52, citing at ¶ 26, citing *Pang* at 187.

{¶ 43} In short, appellant has failed to establish any prosecutorial misconduct during closing arguments which resulted in appellant being deprived of a fair trial.  Therefore, the trial court did not abuse its discretion in denying appellant's motion for

---

[8]  As pointed out previously, at page 439 of the trial transcript, defense counsel lodged a general objection to a statement made by the prosecutor that included a reference that it did not matter that Hanna Geiger injected herself with the cocaine, but it is unclear from the transcript to what specifically he was objecting. This statement also included a reference to Hanna being a "victim," and appellant stated in his appellate brief that the objection was premised on the use of the word "victim" in describing Hanna Geiger.

mistrial based on alleged prosecutorial misconduct, and appellant's first assignment of error is overruled.

### B. Second Assignment of Error – Sufficiency and Manifest Weight of the Evidence

{¶ 44} In his second assignment of error, appellant argues his conviction of involuntary manslaughter was not supported by sufficient evidence and was against the manifest weight of the evidence.  Specifically, appellant argues the evidence presented was insufficient to establish that the acts of appellant were the proximate cause of Hanna Geiger's death, and therefore the judgment as to this conviction was against the manifest weight of the evidence.  We find no merit to appellant's position.

{¶ 45} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Whether there is evidence legally sufficient to sustain a verdict is a question of law. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 16, citing *Thompkins* at 386. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  In conducting a review of the sufficiency of the evidence, " 'an appellate court does not engage in a determination of witness credibility; "rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' "  *Flood* at ¶ 16, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4; *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16.

{¶ 46} In contrast, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief."  *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the

conflicting testimony."  *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 47}  Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' "  *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996).  "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony."  *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).  A conviction is not against the manifest weight of the evidence because the jury believed the state's version of events over the appellant's version.  *Id.* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38.  A reviewing court must give great deference to the jury's determination of witness credibility.  *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9.

{¶ 48}  Appellant was convicted on one count of involuntary manslaughter, in violation of R.C. 2903.04, by causing the death of Hanna Geiger as a proximate result of committing the felony offense of corrupting another with drugs and/or trafficking in drugs by selling or offering to sell cocaine.  R.C. 2903.04 provides, in relevant part:

> (A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
>
> * * *
>
> (C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree.

{¶ 49} In *State v. Losey*, 23 Ohio App.3d 93, 95 (10th Dist.1985), construing former R.C. 2903.04, this court stated that for purposes of determining culpability for involuntary manslaughter, " 'proximate result' bears a resemblance to the concept of 'proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct." *Id.* at 95. Further, "[i]t is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." *Id.* at 96. Thus, the issue of whether the evidence was sufficient to support a finding that appellant's acts were the proximate cause of Hanna Geiger's death is resolved by whether Hanna Geiger's death reasonably could be anticipated by an ordinarily prudent person as likely to result based upon the facts and circumstances of this case. *State v. Platt*, 10th Dist. No. 03AP-1148, 2005-Ohio-705, ¶ 33.

{¶ 50} Appellant argues that Hanna's death was not within the foreseeable scope of risk created by his conduct when he provided her with the cocaine because he did not administer the cocaine to her; he did not mix the shot for her; and he "had no prior knowledge as to whether or not the decedent consumed a large mixture of drugs and was inebriated prior to the consumption of the cocaine." (Appellant's Brief at 27.) Notably, the latter assertion is wholly belied by appellant's own admission during his interview that Hanna did not appear to be sober, appeared to be high when she arrived at the home the night she died, and had told him she had been smoking crack since she left the hospital. (Tr. at 342-43.)

{¶ 51} Even if appellant had not known she was high upon arrival, however, Hanna's overdose death was within the foreseeable scope of risk created by appellant's act of giving her the cocaine. We observe that over the past decade, Ohio courts have widely acknowledged that the possibility of an overdose death is a reasonably foreseeable consequence of providing a controlled substance to another person. *See, e.g.*, *State v. Sabo*, 3d Dist. No. 14-09-33, 2010-Ohio-1261; *State v. Vogt*, 4th Dist. No. 17CA17, 2018-Ohio-4457; *State v. Veley*, 6th Dist. No. L-16-1038, 2017-Ohio-9064, ¶ 25 (finding death need not be actually envisioned to be foreseeable); *State v. Wells*, 12th Dist. No. CA2016-02-009, 2017-Ohio-420, ¶ 39 (finding "[t]here is nothing extraordinary or surprising about the

manner of [decedent's] death in relation to appellant's actions. Appellant provided drugs to a known drug abuser. The possibility of an overdose is a reasonably foreseeable consequence of providing a controlled substance to another"). Upon consideration, we find we are of like mind.

{¶ 52} Furthermore, although in his brief appellant specifically attempts to distinguish *Sabo* from the facts of this case, the attempt wholly fails as the facts of the cases bear much more in resemblance to each other than in difference. In both cases there was evidence of decedent's inebriated condition, which appellant admitted in this case (Tr. at 342-43); that the decedent and appellant had taken other substances together, which appellant admitted in stating he and Hanna were both smoking the cocaine initially (Tr. at 310); and that the defendant warned the decedent about using the illegal substance, which appellant admitted in stating he told Hanna not to inject the cocaine (Tr. at 311.). Thus, contrary to appellant's argument, under the facts of this case, a rational trier of fact could readily have found that the prosecution proved beyond a reasonable doubt that appellant's conduct was the proximate cause of Hanna's death. Therefore, the evidence was sufficient to support a finding that this element of the crime was met. And, because there was no conflicting testimony on this issue for the jury to resolve, appellant's conviction of involuntary manslaughter was not against the manifest weight of the evidence.

{¶ 53} In sum, appellant has failed to demonstrate the evidence was insufficient or that the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction on the involuntary manslaughter count must be reversed and a new trial ordered. Because appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, his second assignment of error is overruled.

### C. Third Assignment of Error – Merger

{¶ 54} In his third assignment of error, appellant argues all five of his criminal convictions should have merged pursuant to R.C. 2941.25. We do not agree.

{¶ 55} In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to R.C. 2941.25, otherwise known as the multiple counts statute, an appellate court conducts its review de novo. *Flood* at ¶ 25, citing *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. Thus, although we must apply the law to the facts of the individual case

before us in making a legal determination as to whether R.C. 2941.25 allows multiple convictions, " ' "[t]hat facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court." ' " *Id.*, quoting *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 56} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 57} " 'When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses.' " *Flood* at ¶ 27, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 58} In determining whether two offenses are allied offenses that merge into a single conviction, we " 'must evaluate three separate factors: the conduct, the animus, and the import.' " *Flood* at ¶ 28, quoting *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. " 'If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.' " *Flood* at ¶ 28, quoting *Ruff* at ¶ 25. "Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge." *Id.*, citing *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 59} Appellant argues the trial court erred in failing to merge all five offenses for purposes of conviction and sentencing because they all emanate from his conduct of

acquiring cocaine. This is not so. With respect to the offense of gross abuse of a corpse and the offense of tampering with evidence, the conduct of appellant was wholly separate and distinct both from each other and from the other three offenses. The tampering with evidence charge arose from appellant disposing of Hanna's purse and car. The gross abuse of a corpse charge arose from putting Hanna's body wrapped in trash bags in the basement and leaving it there for over a month after she had died. These acts exist separately and apart from the act of acquiring cocaine and should neither merge with each other nor with any of the other three offenses pursuant to R.C. 2941.25.

{¶ 60} With respect to the remaining three offenses of trafficking in drugs, corrupting another with drugs, and involuntary manslaughter, the offenses do not merge because of the dissimilar import of the offenses. As argued by the state, the three offenses clearly escalate in terms of import and the significance of the harm. Trafficking need not involve any harm at all and is a fifth-degree felony. Corrupting another with drugs requires serious harm and is a second-degree felony. Involuntary manslaughter requires death, the most serious harm of all, and is a first-degree felony. The three offenses clearly require differing degrees of harm.

{¶ 61} Further, we note that when the trial court conducted its analysis on the merger issue, it specifically addressed why it would not be proper to merge the corrupting another with drugs offense and the involuntary manslaughter offense as requested by appellant. The trial court rightly concluded that the physical harm caused by the corrupting with drugs was not Hanna's death; rather, it was the harm which occurred during the period of time between Hanna's ingestion of the cocaine and her death, which the coroner's expert testified could have been as long as 10 or 15 minutes. (Tr. at 222.) As urged by the state, the different timing of the offenses serves to further solidify the fact that the offenses are dissimilar in import.

{¶ 62} In sum, we find the five separate offenses for which appellant was convicted have different import and significance of harm, and the trial court did not err when it determined that none of them should merge for purposes of sentencing. Accordingly, appellant's third assignment of error is overruled.

**IV. Disposition**

{¶ **63**} Having overruled appellant's three assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

BROWN and DORRIAN, JJ., concur.

———————